UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEMIA SHYMANSKY f/k/a WYNEIKA WILBURN, <br><br> Plaintiff, <br><br> -vs- <br><br> WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., ROCKET COMPANIES, INC., ROCKET MORTGAGE, LLC, NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER, MR. COOPER GROUP INC., NIASHA SHYMANSHKY a/k/a NIASHA SHYMANKY a/ka NIASHA SHYMANSKY, TJC PROCESS SERVICE, LTD., ROBERTSON, ANSCHUTZ, SCHNEID, CRANE & PARTNERS, PLLC, REED SMITH LLP, MARK G. ABERASTURI, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, and the UNITED STATES OF AMERICA, <br><br> Defendants. | Case No. 1:26-cv-02218 <br><br> **COMPLAINT** <br><br> Jury Demand |

DEMIA SHYMANSKY f/k/a WYNEIKA WILBURN ("Demia"), the plaintiff in

the above-captioned proceeding, brings this suit against WELLS FARGO & COMPANY (the

"Company"), WELLS FARGO BANK, N.A. (collectively with the Company, "Wells Fargo"),

ROCKET COMPANIES, INC., ROCKET MORTGAGE, LLC (collectively with Rocket

Companies, Inc., "Rocket"), NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER, MR.

COOPER GROUP INC., NIASHA SHYMANSHKY a/k/a NIASHA SHYMANKY a/k/a

NIASHA SHYMANSKY ("Niasha"), TJC PROCESS SERVICE, LTD. ("TJC"), ROBERTSON,

ANSCHUTZ, SCHNEID, CRANE & PARTNERS, PLLC ("Robertson Anschutz"), REED

SMITH LLP ("Reed Smith"), MARK G. ABERASTURI, NEW YORK STATE DEPARTMENT

OF TAXATION AND FINANCE ("DOF"), and the UNITED STATES OF AMERICA (the "U.S.")

and alleges as follows:

## NATURE OF ACTION

1. This actions seeks compensatory and punitive damages pursuant to 18 U.S.C. § 1964(c), 18 U.S.C. § 1341, 18 U.S.C. § 1343, 18 U.S.C. § 1951 (the "Hobbs Act"), 18 U.S.C. § 1030, 15 U.S.C. § 1692 (the "Fair Debt Collection Practices Act" or "F.D.C.P.A."), 15 U.S.C. § 78(m), and 17 C.F.R. 240.10b-5 ("Rule 10b-5"). Demia seeks compensation for damages sustained as result of the mail fraud, wire fraud, computer-related fraud, common law fraud, securities fraud and extortion committed by the defendants, in sum or in part.

2. The defendants willfully participated in a scheme to defraud Demia out of rightful ownership of her real property by employing the mail and telecommunication systems to promote falsehoods, including, but not limited to, Niasha being a potential successor-in-interest of the real property without having provided any evidence to substantiate such claim. They further colluded to submit false statements to the judicial system in furtherance of their collection activities. Their evidence was so facially defective that the common eye would recognize it to be impossible to be true.

3. In an attempt to wash the fraud from its hands, Wells Fargo transferred the servicing rights of the underlying mortgage to Rocket after initiating a foreclosure action to recover Demia's inherited property. Rocket assumed the responsibility of collecting payment from Demia, but the amount demanded was based on wrong information. Specifically, Wells Fargo intentionally omitted having received payments from Demia after May 1, 2024 from its complaint in the

foreclosure proceeding. Rocket continued the same narrative in spite of knowing that information to be false.

4.      To date, neither party has attested to the truth of their statements, except Demia. To date, Niasha remains a mystery who will supposedly be unaffected by the final judgment, aside from the obvious result of removing Demia as the rightful owner to make way for her false claim.

5.      None of their fraudulent activity is mentioned in either annual filing for Wells Fargo or Rocket to the U.S. Securities and Exchange Commission in spite of such activity being integral to salvaging the revenue streams of Wells Fargo and Rocket. It is not a common Rule 10b-5 claim, in which an unsuspecting investor relies on their registration statements in connection with the purchase of securities. Instead, it is a case in which the originator of the underlying asset is directly injured as a result of the purchaser's reliance on the seller's material omissions and the injured party's inability to rely on the veracity of the securities registration statements in forming her defense.

**PARTIES**

6.      Demia is a resident of the State of New York (the "State") and an attorney licensed in the State. She inherited real property located in the State, which is the subject of a foreclosure proceeding initiated by Wells Fargo Bank, N.A. She is the daughter-in-law of the original mortgagor of her property and his son's surviving spouse. She formerly worked for the City of New York (the "City") in a non-legal capacity.

3

7.    The Company is a Delaware corporation with its principal offices located in the State of California ("California"). It is a global financial services firm, operating primarily as a holding company with approximately $2.1 trillion of assets in its portfolio.

8.    Wells Fargo Bank, N.A. is a Delaware corporation with its principal offices located in California. It is a subsidiary of the Company and represents 85% of its assets. It engages in consumer and commercial finance by offering banking, investment, and mortgage products and services. Its operations are concentrated in the United States but also extend to global markets.

9.    Rocket Companies, Inc. is a Delaware corporation with its principal offices located in Detroit, Michigan. It identifies as a fintech company specializing in the real estate, mortgage, and personal finance industries. It is the parent company of several mortgage industry-related businesses, including, but not limited to, Mr. Cooper and Rocket Mortgage, LLC.

10.    Rocket Mortgage, LLC is a wholly-owned subsidiary of Rocket Limited Partnership, which is registered in Michigan.

11.    Nationstar Mortgage LLC d/b/a Mr. Cooper is a Delaware limited liability company with its principal offices in Coppell, Texas. It is one of the nation's largest residential mortgage servicers. Its revenue is driven by the servicing, origination, and transaction of mortgages with single-family residences as the underlying assets. Its primary investors include government sponsored entities, such as the Government National Mortgage Association ("Ginnie Mae").

12.    Mr. Cooper Group Inc. is supposedly a Delaware corporation with its principal offices in Coppell, Texas.  According to its 10-K filing dated February 20, 2025, it is the

4

parent company of Nationstar Mortgage LLC. However, billing statements from Rocket describe Mr. Cooper as a "brand name" and "service mark".

13. Niasha is an unknown person, who, according to Wells Fargo, is a potential successor-in-interest in the property inherited by Demia. No other information has been provided about Niasha. Wells Fargo and its counsel refuse to name Niasha as a defending party in the foreclosure proceeding in spite of the status that it granted her. Demia suspects that she is affiliated with the City.

14. TJC is a legal services firm registered in the State. It provides service of process, document retrieval, legal advertising, and court filings to companies of varying sizes. It has a standing agreement with Wells Fargo's counsel to file legal documents on its behalf.

15. Robertson Anschutz is Florida-based law firm specializing in foreclosure matters, including bankruptcy and litigation. It has six (6) offices in the United States, but no website. Wells Fargo retained its services in the foreclosure proceeding involving Demia's property.

16. Reed Smith is a full service international law firm with approximately 30 offices globally. Its clients are mostly large institutions engaged in sophisticated, complex business. It represented Wells Fargo Bank, N.A. in the foreclosure proceeding involving Demia's property.

17.    Mark G. Aberasturi[1] is an attorney licensed to practice in the State. His practice focuses on estate administration, including elder law, trusts, and wills. He was assigned to serve as guardian ad litem for unknown heirs in the foreclosure proceeding.

18.    DOF is an agency of the State tasked with the administration and collection of taxes as well as the enforcement of laws governing such revenue. It filed a lien against Demia's property.

19.    The U.S. is a guarantor of the underlying mortgage on Demia's property, by and through the U.S. Department of Veterans Affairs (the "V.A.").

20.    The City (potential party) is a municipality located in the State and the former employer of Demia and her deceased husband. Upon information and belief, certain parties employed by the City may have used Demia's and/or her husband's information to defraud her of her inheritance. Because they both worked in law enforcement, they were subject to background investigations, which resulted in the creation of extensive personnel profiles, irrespective of legitimacy. While Demia was employed with the City, an employee threatened to take all of her property. Since that time, she was illegally displaced, subjected to vehicular theft, and dragged into a foreclosure proceeding. Its involvement, by and through its employees and/or representatives, is being determined.

---

[1] Upon information and belief, parties discovered that the author was naming Mr. Aberasturi as a defendant in this action by illegal surveillance methods. After that time, it is believed that Mr. Aberasturi possibly declined the appointment.

6

**JURISDICTIONAL STATEMENT**

21.    Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over the claims rooted in federal law, including those alleging participation in racketeering activity and violation of the F.D.C.P.A.

22.    Jurisdiction is proper with this Court under 28 U.S.C. § 1332, because at least one of the defendants, against whom it is believed to be a legitimate claim, maintains its principal place of business and is registered in a foreign state.

23.    This Court has original and exclusive jurisdiction pursuant to 15 U.S.C. § 78aa for claims asserting securities violations.

24.    This Court has original and exclusive jurisdiction pursuant to 28 U.S.C. § 1338 over matters concerning copyright protection and trademarks. Although Demia's claim is not based on such provisions, Rocket's characterization of Mr. Cooper as a brand name and service mark triggers analysis under such provisions for the purpose of painting the scheme to defraud. Thus, jurisdiction in this Court is proper.

25.    Jurisdiction and venue are properly with this District pursuant to 28 U.S.C. § 1394, because each defendant has substantial contact with the State by conducting business in this District and/or having a registered agent.

**FACTUAL ALLEGATIONS**

26.    This case is not a second act to the foreclosure proceeding pending in state court. It is the main feature.

27.    On or around January 23, 2017, Mr. Russell Shymansky entered into an agreement with Veterans' United Home Loans to finance the purchase of a single-family residence for his primary use. He relied on the issuance of a voucher pursuant to the commonly known G.I. Bill, thereby employing the V.A. as a guarantor for a portion of the loan.

28.    The senior Mr. Shymansky passed on or around December 23, 2017. Under the laws of the State, interest in the property passed immediately to his son, Demia's husband.

29.    During this time, Demia and her husband were both employed by the City.

30.    According to documents supplied by Wells Fargo, Mortgage Research Center, LLC d/b/a Veterans United Home Loans transferred its interest in the mortgage to Wells Fargo on or around March 9, 2018.

31.    On or around April 8, 2022, Demia's husband passed away, and under the laws of the State, ownership interest in the property immediately transferred to her. Specifically, she was and continues to be his surviving spouse. Pursuant to the State's intestate laws, any and all property interests, real and personal, passes to a surviving spouse with no children. N.Y. E.P.T.L. § 4-1.1(a)(2) (2024). Demia is such a person.

32.    In or around November 2024, Demia discovered a notice that was supposedly from Wells Fargo plastered to the window of the front door. It was a notice reporting a first visit to the property. When she called the number on the notice, a representative claimed that Wells Fargo had a right to inspect the property. By that time, it had not sent any notice of its intent to inspect the property.

33.    Nevertheless, Demia told the representative not to return. The representative insisted that they would continue conducting inspections.

34.    In or around January 2025, Demia learned that a property manager retained by Wells Fargo visited and entered the property. By this time, Wells Fargo still had not sent written notice of its intent to enter the property.

35.    On or around March 11, 2025 c. 3 PM, Demia called Wells Fargo Properties at (877) 617-5274 regarding damage to the property sustained during its entry into the property. She first spoke with a "Josh" before reporting the damage to "Anthony".

36.    On or around March 19, 2025, Demia returned to the property and discovered a lockbox had been placed on the door. The locks to the house had been changed without her authorization. By this time, Wells Fargo had not commenced a foreclosure proceeding, and thus, it did not have a judgment of foreclosure and sale.

37.    Demia called Wells Fargo Properties c. 11:22 AM and spoke with "Sierra" regarding the property damage and removing the lockbox on the door. She denied the request to remove the lockbox.

38.    Demia repeated calls to Wells Fargo Properties on or around March 26, 2025 and March 27, 205 and spoke with "Jennifer" and "Maria", respectively. The damage remained unrepaired. The communication with a representative from a division of Wells Fargo continued until on or around April 29, 2025 when Demia spoke with a representative named "Jordan".

39.    By that time, no representative had questioned Demia's ownership interest in the property. Demia informed Jordan that her husband passed, and for that reason, she was the responsible party. Demia further faxed Jordan at (866) 968-8247 a death certificate establishing the familial relationship of all of the parties who had legitimate interests in the property.

40.     By May 5, 2025, no mail had arrived at the property addressed to Niasha. In fact, it was not until after Demia sent that fax to Wells Fargo that any mail addressed to Niasha arrived at the subject property.

41.     By Wells Fargo's own admission, it added Niasha as a potential successor-in-interest on May 7, 2025. *See* Wells Fargo Documents, Ex. A, p. B032. Demia contested Niasha as a potential successor-in-interest. Wells Fargo subsequently mailed a letter dated August 11, 2025 stating that evidence that Niasha did not have any ownership would need to be presented before she could be removed as a potential successor-in-interest. *See* Wells Fargo Documents, Ex. A, p. B035.

42.     Prior to the mailing of that letter, Wells Fargo, by and through its representative, conducted a due diligence search on June 20, 2025. The search confirmed that Demia was and is the surviving spouse. *See* Due Diligence Affirmation, Ex. D. The search revealed no information about Niasha. The affirmant identified Demia as the decedent's spouse and further noted the absence of any children.

43.     By August 11, 2025, Wells Fargo knew or should have known that Niasha had no legitimate interest in Demia's inherited property. Nevertheless, it represented that she could not be removed from the records without additional evidence and further noted its intent to refer the case for foreclosure. *See* Wells Fargo Documents, Ex. A, p. B035

44.     Some information must have been lost during the referral. Niasha, in spite of not being removed from Wells Fargo's records as a successor-in-interest, was not named as a defendant in the foreclosure proceeding initiated on or around August 21, 2025. *See* Excerpts from Complaint dated Aug. 20, 2025, Ex. F.

45.     Robertson Anschutz signed and filed the complaint dated August 20, 2025 in which it seeks a judgment of foreclosure and sale (the "Complaint"). *See* Excerpts from the Complaint, Ex. F.

46.     The Complaint alleged that Demia, as heir of her husband's estate, failed to make a payment since April 1, 2024. *See* Excerpts from the Complaint, Ex. F. However, Demia submitted into evidence correspondence from Wells Fargo showing that she remitted payments since that time. *See* Wells Fargo Documents, Ex. A, p. B026.

47.     Additionally, the Complaint was not accompanied by a statement attesting to the veracity of the allegations made in the complaint. An administrative order dated March 2, 2011 requires a representative from the company to represent that (s)he reviewed the documents substantiating the mortgagor's right for relief and further attest to the truth of the statements. *See* Administrative Order 431/11 dated Mar. 2, 2011, Ex. H. Wells Fargo submitted no such statement. *See* Excerpts from the Complaint, Ex. F.

48.     Robertson Anschutz, as Wells Fargo's counsel, simply filed certificates of merit, in which a company representative and an attorney from the firm attested to having reviewed the documents for accuracy but not that the documents were accurate.

49.     The signatory of the Complaint is Kelly Faber. When Demia performed an internet search for Ms. Faber in or around September 2025, she had no affiliation with Robertson Anschutz. She was a co-founder of another law firm.

50.     Since Demia raised that objection, a hyperlink to a LinkedIn profile shows that she is an attorney with Robertson Anschutz.

51.    TJC filed affidavits of service on or around September 9, 2025 in which the affiant made false statements to establish personal jurisdiction over Demia and the mysterious unknown heirs in a case involving a surviving spouse with no issue of the marriage.

52.    One such statement attested to having attempted service at 7:05 AM on August 30, 2025, which, if true, would have violated the F.D.C.P.A., because it was before 8:00 AM. Additionally, Demia was at the property on that date and time and no one visited that day.

53.    On or around September 22, 2025, Demia filed a motion to dismiss dated September 22, 2025 (the "Motion to Dismiss"). She challenged personal jurisdiction, because of the false statements made by the affiant.

54.    She further objected to subject matter jurisdiction, because the foreclosure was part of a scheme to defraud Demia of her inheritance. For that reason, a federal court should resolve the dispute. It was not presented to the state court for adjudication, but rather for appreciation that federal court would be the proper court to resolve matters rooted in federal law.

55.    Since then, Wells Fargo, Robertson Anschutz, TJC, and Reed Smith took affirmative steps to undermine Demia's arguments, including filing false statements and changing records with the court and on Demia's personal computer.

56.    On or around October 15, 2025, Robertson Anschutz moved the state court to complete service by publication (the "Publication Motion"). It filed an attorney affirmation in which the affirmant stated that they were unable to locate and serve the "defendants" because where they lived and worked were unknown, thereby conceding lack of personal jurisdiction.

57.    Demia reviewed the filing and took notes.

12

58.    On or around October 23, 2025, Demia had a hearing in Kings County, New York in a special proceeding regarding the City of New York paying monies owed to her in connection with her husband's pension. The hearing was initially scheduled for 2:30 PM.

59.    That same day, she received an email notification at 11:07 AM that Wells Fargo was changing attorneys from Robertson Anschutz to Reed Smith. Within less than an hour, Reed Smith filed a letter to the court stating that its counsel attempted to contact Demia for an adjournment but were unable to do so, and the court approved its request. The return date for the Motion to Dismiss was scheduled for the next day, but the court adjourned it 30 days.

60.    At the time that the notification was received, Demia was on the subway in route to state court in Kings County. By the time that she exited the train and sat down for lunch, the court had approved its request. She did not have opportunity to respond formally by filing correspondence with the court. She also had not received a phone call.

61.    Demia worked on her opposition to the Publication Motion between November 17, 2025 and November 20, 2025. She noticed that the Publication Motion had changed by their defining the term "defendants" to exclude Demia. The new iteration stated that she had been located and served, but they were unable to serve unknown heirs. It further requested the appointment of a "counselor of law" to be a guardian ad litem for such parties.

62.    On or around November 19, 2025 around 9:46 PM, Demia documented instances of hacking on her personal computer. She was working on her opposition at the time. The changes favored Wells Fargo's position, because she was unable to access certain case law, especially in regards to standing and striking a process server's false affidavits of service, and her download of Robertson Anschutz's attorney affirmation had changed.

63.     Demia filed her opposition to the Publication Motion on November 20, 2025.

64.     The changes to the court filings seemingly followed a hearing held on or around November 6, 2025 regarding Demia's proceeding *in forma pauperis*. Demia appeared virtually. During the hearing, Demia was sworn in, and the court asked her only one (1) question – where did she live. It approved her application.

65.     Demia noticed only two (2) persons sitting in the spectator area of the courtroom at the time of her hearing. One person appeared to be a middle-aged white female with shoulder-length, blonde hair, and sitting next to her was a heavy-set, middle-aged, white male with dark hair. After Demia's hearing concluded, she personally witnessed the blonde woman approach the bailiff with a document in hand. Her mouth moved as the bailiff took notes.

66.     An attorney from Reed Smith emailed that she was unable to log into the hearing.

67.     That same attorney was the signatory of the attorney affirmation filed in opposition to the Motion to Dismiss on December 5, 2025 (the "Opposition Affirmation"). She responded to Demia's challenge against personal jurisdiction by characterizing it as "bare bones". She further stated that the process server believed the person that he actually served in September 2025 was Demia. She explained that searches in databases had been run regarding Demia's identity, and those searches along with a GPS log were attached to the supplemental filing.

68.     The searches attached to the Opposition Affirmation were conducted on October 28, 2025. *See* Figure 1. For that reason, the Publication Motion as it appears in the records as of date could not have been true. Additionally, the affirmant of the Opposition Affirmation knew

or should have known that it was not possible for the process server to have believed reasonably in September 2025 that he served Demia. *See* Figure 2.

Figure 1

```
FILED: ORANGE COUNTY CLERK 12/05/2025 03:50 PM          INDEX NO. EF008222-2025
NYSCEF DOC. NO. 82                                       RECEIVED NYSCEF: 12/05/2025


        10/28/25, 9:51 AM                      DIAL IN WEB APPLICATION
        Help
        TODAY'S DATE: 10/28/2025   TIME: 09:50:98
             *RECORD EXPANSION-FOR: SHYMANSKY, DEMIA
                                               CLIENT ID#: 928803747
```

Figure 2

22.    In further support, Plaintiff respectfully submits a suppl[...]

Cedeno *("Cedeno Aff.")* annexed hereto as **Exhibit A** with supporting Exhibits A- F. In this

affidavit the process server recounts all of the events of this specific service, including the GPS

photograph of this service and attests that he believes that the woman who answered the door on

the date of service, September 3, 2025, to be the Defendant, Demia Shymansky. The affidavit

includes all searches for the Defendant, i.e. postal, TransUnion, Department of Motor Vehicle,

voter registration, which show that her current and most valid address is the Property address

where service was completed.

23.    To dispute the statements set forth in the affidavit of service, Defendant simply

states, without any further detail or support, that "according to [her] record of events for those

dates, including her documenting video recordings from the door of the subject property, those

statements are impossible to be true." This unsupported, bare bones, allegation is insufficient to

rebut the statements made in the affidavit of service.

24.    Indeed, Ms. Shymansky, a lawyer, does not actually *deny* being served with

process.

- 5 -

69.    The affidavits of service filed on September 9, 2025 do not attest to a positive identification of the person, and they are not accompanied by a signature or a GPS log. The GPS log was not submitted until December 5, 2025. For that reason, Robertson Anschutz or TJC could not have known at that time that the person served was Demia.

70.    The GPS log was clearly fraudulent. *See* Figure 2. As shown below, it is an undated image with location coordinates appearing above a dark figure facing away from the house. The yard was so overgrown that the driveway cannot be seen in the image. It also does not show damage to the property. A bright light is captured as if the sun is shining from the left of the pictured figure onto the house. The image is slanted in the opposite direction. It is not clear who took the picture. It could not be the figure facing away from the house.

[INTENTIONALLY LEFT BLANK]

Figure 3



FILED: ORANGE COUNTY CLERK 12/05/2025 03:50 PM

NYSCEF DOC. NO. 82

INDEX NO. EP008222-202!

RECEIVED NYSCEF: 12/05/202!

71.    It is probably an old picture of the house modified to give the impression that a GPS log was created on the day of the alleged service.

72.    Demia had cut the grass on August 24, 2025 from 2 PM to 6 PM.

73.    For the record, Wells Fargo, Robertson Anschutz, and Reed Smith focus on service effected against Demia only.

74.    If such service were true, then by handing the documents to a person of suitable age at his/her usual place of abode and mailing the same would have been good service

17

against all possible parties, except the U.S. and DOF, under state law. Service by publication would have been unnecessary.

75.    Wells Fargo and Reed Smith still resisted adding Niasha to the proceeding in the Opposition Affirmation. They established that Niasha contacted Wells Fargo claiming to be the surviving spouse of the mortgagor and requested access to the account. *See* Figure 3. As per Wells Fargo's policy and procedure, Niasha was added as a potential successor-in-interest and granted limited access to account information, just as Demia had been added to the account. Only Demia, however, was named as a party to the proceeding. For that reason, only Demia's interest would be foreclosed. As Reed Smith's attorney attested, Niasha's interest would be unaffected by a judgment of foreclosure and sale.

Figure 4

Niasha Shymansky[2] must be made a party to this foreclosure proceeding concerning the Property. Regardless, this action can proceed without Niasha as her interest, *if any*, would simply remain unaffected by this foreclosure action. Therefore, the motion to dismiss on necessary party grounds should also be denied.

38.    In fact, there are no indispensable parties in foreclosures, which are *in rem* actions.

---

[2] Niasha Shymansky ("Niasha") has not been identified by Plaintiff as party defendant to this action; however, she did contact Wells Fargo requesting account access to receive information, stating that she received ownership interest in the property as surviving spouse to the Borrower. Per Wells Fargo's procedure and policy Niasha was added to the account as a *potential* successor in interest *which simply allows her to receive limited account information*. A letter was sent to Niasha on May 6, 2025 advising of what was required for her to be *confirmed* as a successor in interest or authorized as an interested party. Wells Fargo did not receive any documents or any further contact from Niasha. Also, contrary to Defendant's claims, Wells Fargo also added *Defendant* to the account as a potential successor in interest after receiving a call from Defendant asserting that *she* has received the Borrower's ownership interest in the Property. The letter from Wells Fargo to Defendant dated August 11,2025 is annexed to Defendant's own motion. (*See NYSCEF Doc No.22*). None of this has anything to do with necessary parties to this foreclosure for the purposes of a motion to dismiss - these are simply extra-judicial unproven assertions of an interest in the property at issue.

- 9 -

9 of 13

18

76.    That statement is wrong. The mysterious Niasha would be clear to claim title to the property even if by purchase for pennies on the dollar at an auction sale. With Demia out of the way, her position would improve.

77.    The Opposition Affirmation was not supported by a copy of Wells Fargo's policy and procedure.

78.    The affirmant of the Opposition Affirmation also maintained that Wells Fargo had standing and adequate documentary evidence in response to Demia highlighting for the court that neither a company representative nor attorney for Wells Fargo attested to the truth of the statements in the Complaint and that the acknowledgment of the mortgage assignment bore a signature that differed from the name of the notary. According to her, the rules required only a certificate of merit that attested to the person having reviewed the documents for accuracy, not that they are actually accurate.

79.    The Opposition Affirmation disregarded Administrative Order 431/11 dated March 2, 2011 issued by the Chief Administrative Judge of the Courts in New York State which requires attorneys and/or a company representative to attest to having reviewed the filings in foreclosure matters for accuracy and confirming the accuracy of the information. Wells Fargo and Reed Smith insist that they need only attest to having reviewed for accuracy.

80.    Following their line of reasoning, Wells Fargo can put forth a foreclosure matter with material errors as long as someone simply reviewed the documents. No one ever has to confirm with a reasonable level of certainty that the representations are accurate, including the amount due and outstanding.

81.     Just one (1) day before the filing of the Opposition Affirmation, Robertson Anschutz filed a reply affirmation dated December 3, 2025 in support of its Publication Motion (the "Publication Reply").

82.     According to the Publication Reply, Demia and not Wells Fargo identified Niasha as an heir. *See* Figure 5. It further confirmed that Demia is the surviving spouse of the last recorded owner of the subject property and that the investigator did not locate any other living heirs.

Figure 5

---

34.     Defendant alleges that Plaintiff is intentionally excluding heir NIASHA SHYMANSHKY ("Niasha") from this Foreclosure Action.

35.     Contrary to Defendant's allegations, Plaintiff retained an investigator for the specific purpose of ascertaining potential heirs of the Borrower. **See NYSCEF Doc # 33.**

36.     Simply stated, Plaintiff cannot be expected to be independently aware of all potential heirs of the borrower without such an investigation.

37.     Through his investigation, the investigator confirmed that Defendant is the decedent's spouse. **See NYSCEF Doc # 33.**

38.     The investigation did not find any other living heirs.

39.     In fact, the Affidavit of Due Diligence offered by the investigator reflected that the Defendant did not cooperate with the investigator's efforts to confirm the identity of other potential heirs. **See NYSCEF Doc # 33.**

7

7 of 9

FILED: ORANGE COUNTY CLERK 12/04/2025 11:34 AM     INDEX NO. EF008222-2025
NYSCEF DOC. NO. 78                                  RECEIVED NYSCEF: 12/04/2025

40.     In any event, any such unknown heirs, included the individual identified by Defendant, will have the opportunity to answer the Complaint and join this action if Plaintiff's instant Motion is granted.

83.     Those statements contradict earlier representations regarding the existence of possible unknown heirs, because Demia is the surviving spouse. Niasha was not identified by Demia, but rather by Wells Fargo.

84.     During Demia's legal battle in state court, Wells Fargo transferred the servicing rights of the underlying mortgage to Rocket. Wells Fargo notified Demia via a letter dated November 12, 2025, in which it informed her that such transfer would be effective on December 2, 2025. *See* Rocket Correspondence, Ex. C. At that point, "Rocket Mortgage will handle items related to servicing [the] mortgage, such as processing payments and helping [ ] with questions."

85.     Since that time, Demia received at least eight (8) pieces of correspondence from Rocket through the mail service. The earliest communication is dated December 11, 2025 and was received on or around December 20, 2025. It is a welcome to Rocket. It further perpetuates the statement that a payment has been due since May 1, 2024, thereby disregarding any payments received and applied to the account after such time. Thus, its calculation of the total amount due and outstanding is wrong. The alleged amount due on December 1, 2025 was $51,457.86, and such payment would be considered late if received after December 17, 2025. Most notably, it claimed that the loan was being serviced on behalf of Ginne Mae II MBS Pool# CM1542.

86.     In less than one (1) week, Demia received another notification from Rocket dated December 16, 2025, in which it claims to "have the right to invoke foreclosure based on the terms of [her] mortgage contract." A foreclosure already was and is pending.

87.     Each correspondence from Rocket bears its logo at the top of the letterhead with information about Mr. Cooper at the bottom. Mr. Cooper is described as a "brand name" and

21

"registered service mark" for Nationstar Mortgage LLC. Nationstar Mortgage LLC does business as "Mr. Cooper".

88.    The relationship of these entities was not clear. Demia researched the annual SEC filings for Wells Fargo, Rocket, and Nationstar Mortgage, LLC. Wells Fargo's registration document that Demia discovered on its website was a 21-page document that excluded sections imposing strict liability and required to be filed annually. Those sections reveal the Company's investment strategy and other material information valued by investors.

89.    The 10-K statement for Rocket dated March 2, 2026 described the acquisition of Mr. Cooper via a stock purchase of 100% of its outstanding shares, but it did not mention Nationstar Mortgage LLC. *See* Rocket 10-K, Ex. B.

90.    The details of the acquisition of Mr. Cooper as described in Rocket's SEC filings are not logical. It essentially means that a brand name issued stock to be traded on a national exchange and Rocket purchased all of the outstanding shares. What is in a name? Not stock.

91.    A name or mark can be an intangible asset registered with the United States Patent and Trademark Office for protection against unlawful use. They also can be available for purchase, but as an asset purchase, not stock.

92.    Based on the representations from Rocket, Demia moved the court to join Rocket Companies, Inc., Rocket Mortgage, LLC, Nationstar Mortgage LLC d/b/a Mr. Cooper, and Mr. Cooper Group, Inc. (collectively, the "Servicers") on December 23, 2025 (the "Joinder Motion"). The return date for the Joinder Motion initially was January 23, 2026.

93.    As a courtesy, Demia contacted the attorneys at Reed Smith to determine if they were representing Rocket as well. They denied representing Rocket but confirmed that they would want to oppose the Joinder Motion.

94.    On or around January 16, 2026, Reed Smith requested a 20-day adjournment for the Joinder Motion. It anticipated changing counsel. Demia agreed to set the return date for January 30, 2026 to allow time to substitute new counsel. The opposition to the Joinder Motion was then due on January 23.

95.    On or around January 23, 2026, a consent to change counsel from Reed Smith to Robertson Anschutz was filed with the court. After receiving the court notification, Demia emailed Reed Smith that given the incoming counsel was Robertson Anschutz, the same firm that initiated the proceeding, she would not adjourn the return date beyond January 30.

96.    By January 24, 2026, Demia had not received a court notification regarding the filing of an opposition to the Joinder Motion. Such notification did not appear until January 30, 2026 c. 5:48 PM. She picked up the mail around the same time, which included a letter from Robertson Anschutz. The letter was pre-stamped January 23, 2026, but it had no indication that it actually had been processed through the mail system. *See* Robertson Anschutz Opposition dated Jan. 23, 2026, Ex. E.

97.    It is worth noting that Demia established a pattern of stopping work on Friday evenings to relax. This pattern continued on March 13, 2026, at which time Demia completed and printed the initial draft of this complaint. She had not received any court notifications regarding a motion filed by Robertson Anschutz on March 13, 2026. She did not receive such notification in her inbox until March 15, 2026 c. 8:26 PM. The arguments directly

23

responded to her arguments in this complaint as if a representative knew of her intent to file. The same cover-up occurred in her action involving another party regarding the theft of her vehicle. Earlier that day, she received a cryptic message on her phone to "pay these people". That message was the same from a City employee who impersonated a police officer at the location where her car was stolen.

98.    Nevertheless, she reviewed the opposition to the Joinder Motion dated January 23, 2026 filed by Robertson Anschutz (the "Joinder Opposition") and drafted a reply.

99.    She highlighted two points from the Joinder Opposition, both of which established the commission of fraud by the Servicers. The affirmant of the Joinder Opposition represented that the inclusion of the Servicers was premature because a mortgage assignment had not been created. He further stated that the parties were in the "midst" of a transfer, which contradicted earlier correspondence from Wells Fargo and the Servicers that servicing rights transferred as of December 2, 2025.

100.    Wells Fargo's interest in opposing the Joinder Motion was not readily apparent, unless it had an interest in the Servicers' ability to continue and/or file a new foreclosure action. The transfer theoretically removed the Niasha dilemma from the case. The Servicers never sent communication claiming that Niasha was a potential successor-in-interest. Wells Fargo did.

101.    The Servicers never acknowledged having received payment and applying such payment to the account after May 1, 2024. Wells Fargo did.

102.    However, the Servicers calculated amounts due and outstanding as if Wells Fargo had not received payment after May 1, 2024. It further included attorneys' fees allegedly

charged to the account since 2019. Any and all calculations would be based on information provided by Wells Fargo or arbitrarily created.

103.    Thus, the affirmant of the Joinder Opposition argued that the Servicers could be substituted as a plaintiff instead of being joined as a necessary party. Here, they can be co-defendants.

104.    Demia attempted to file her reply in support of her Joinder Motion on January 30, 2026 from approximately 7:57 PM to 8:40 PM and again around 11:40 PM but was unable to submit the filing to the court. She kept receiving an error message claiming that the PDF file was problematic. *See* Figure 6. She emailed a courtesy soft copy to all parties around 8:28 PM. She evidenced her inability to file the reply in support of the Joinder Motion around 9:32 PM.

Figure 6



105.    On February 2, 2026, Demia successfully filed her reply in support of the Joinder Motion as part of her application to the court to request the return date be adjourned until February 3, 2026 so that the court could consider her reply. The court approved her request.

106.    She filed her reply to the Joinder Motion again on February 3 separately.

107.    Since that time, Demia has been involved in litigation with other parties that she suspects are part of the same criminal enterprise as the defendants. However, evidence of their direct connection still is being developed.

108.    The Servicers' antics have not slowed down, but rather escalated. For example, Demia received a communication on or around February 9, 2026 that the hazard insurance had expired on the property. Thus, she must call to arrange hazard insurance, which would likely exceed the cost previously negotiated for the property years ago.

109.    The Servicers' billing statement dated January 26, 2026 claims that the underlying mortgage is 636 days delinquent based on the payment being due since May 1, 2024. It further states that the Servicers "have completed the first filing notice required to start the foreclosure process" on the account. *See* Rocket Correspondence, Ex. C. Those statements are lies.

110.    Demia has not received any of the statutorily-required notifications regarding a foreclosure from the Servicers. Additionally, a foreclosure based on the same note and mortgage is pending.

111.    On or around December 26, 2025, Demia received a notice from the Servicers dated December 15, 2025 stating that if the debt was not disputed by January 21, 2026, then it would be presumed valid. Demia emailed the Servicers at the email address provided on

January 20, 2026 c. 9:07 AM. She has yet to receive evidence proving the validity of the debt as represented by the Servicers.

112.    The majority of the correspondence from the defendants regarding the mortgage associated with Demia's inherited property has been through the mail system.

113.    Email communication with Robertson Anschutz and Reed Smith have primarily concerned filings in the foreclosure proceeding.

114.    The interference with her personal computing system occurs while she conducts legal research or prepares legal papers in connection with the foreclosure matter. A pattern has formed that the documents filed by Wells Fargo, Robertson Anschutz, and Reed Smith and downloaded to Demia's personal computer change after Demia files her responses with the court. For that reason, she provided screenshots to accompany this filing.

115.    As of March 11, 2026 c. 1:03 PM, the plaintiff's personal computer was accessed to delete that portion of the complaint in which she discussed the involvement of Reed Smith in changing the filings with the court.

116.    DOF is named as a defendant in the foreclosure matter pending in state court. It has not filed a notice of appearance, but its inclusion was due to it having filed a lien against the property, proof of which was not provided. Nevertheless, Demia provided communication from DOF showing the unlikelihood that the statements were true, including, but not limited to, having received a tax warrant dated for September 11, 2023 and receiving that same tax warrant in the mail on September 11, 2023.

117.    That tax warrant was filed with the County Clerk in Orange County, New York. Having received it on the same day makes it more probable than not that it is fraudulent.

With DOF placing a lien on the house based on a debt that its representatives, agents, and/or employees knew or should have known to be fraudulent makes it part of the scheme to defraud Demia of her inherited property. If Wells Fargo successfully obtains a judgment of foreclosure and sale, DOF would be paid before Demia received her equity in the home, if any is recovered.

118.    On or around March 3, 2026, the state court issued a decision and order dated March 2, 2026 (the "Decision"). *See* the Decision, Ex. G. The Decision denied the Motion to Dismiss in its entirety. The denial of the Motion to Dismiss was not suspicious, it was the language of the court.

119.    The Decision is essentially a regurgitation of the filings by Reed Smith and Robertson Anschutz. The court appointed Mark Aberasturi, Esq. as a guardian ad litem for the unknown heirs of Demia's inherited property in spite of the due diligence report submitted by Robertson Anschutz establishing that Demia is the surviving spouse. It further awards him $350 as soon as he files a notice of appearance in the case, thereby further depleting the equity in her home.

120.    The Decision also repeats the argument that joining the Servicers is "premature", because the parties have yet to complete a mortgage assignment even though Wells Fargo claimed that it transferred the servicing rights to Rocket before the filing of the Opposition Affirmation. For that reason, the parties being in the "midst" of a transfer was not supported by the evidence.

121.    The other parts of the analysis gave the impression that Wells Fargo, Reed Smith, and Robertson Anschutz adjusted their filings after Demia's submissions then drafted a script for the court. For example, the court described Demia's challenge of personal jurisdiction as

"bare bones" without any legal discussion indicating independent thought. It lacked reference to the Fair Debt Collection Practices Act, because Reed Smith's and Robertson Anschutz's filings made no mention of that violation. It failed to acknowledge the fraudulent nature of the supplemental affidavit, because Reed Smith stood by it as true.

122.    Niasha was not even considered a necessary party in spite of Wells Fargo granting her the same status as Demia. By Reed Smith's own admission, Wells Fargo, pursuant to its unsupplied policy and procedure, treated Demia and Niasha the same. Yet, Demia was the only one named as a defendant to have her interests foreclosed.

123.    This filing is not forum shopping. The foreclosure remains pending in state court and has yet to be removed. At any and all times, Demia insisted that jurisdiction over her defenses to the foreclosure lays with the federal courts. Generally, schemes to defraud appear as business as usual. Federal courts customarily analyze the intricate facts in relation to federal law. The foreclosure proceeding needs to be reviewed as part of a scheme to defraud, not a natural course of bad events. Now, we are here.

**FIRST CAUSE OF ACTION – RACKETEERING (18 U.S.C. §§ 1962 AND 1964)**

124.    Wells Fargo, the Servicers, Robertson Anschutz, Reed Smith, Mark Aberasturi, and Niasha formed and/or participated in a criminal enterprise orchestrated by Niasha for the purpose of defrauding Demia out of her home.

125.    Niasha set the scheme to defraud in motion by employing telecommunications to contact Wells Fargo and claim to be the surviving spouse of the mortgagor. Wells Fargo, by and through an authorized employee, entered her into its records as a potential

successor-in-interest. Demia provided Wells Fargo with a death certificate that showed her relationship with the mortgagor.

126. Wells Fargo and/or Robertson Anschutz contracted an investigator to research the potential heirs of Demia's inherited property. Based on his findings, Wells Fargo, knew or should have known that Demia was a surviving spouse and rightful owner of the subject property by July 16, 2025. However, as of August 11, 2025, its records continued to reflect Niasha as a potential successor-in-interest.

127. In spite of maintaining records assigning Niasha the same rights as Demia, by and through its counsel Robertson Anschutz, Wells Fargo initiated a legal proceeding to intentionally foreclose Demia's interest in the property.

128. Further, Wells Fargo, Robertson Anschutz, and Reed Smith intentionally represented that they had familiarity with the facts of the case and had reviewed such documents for accuracy. In spite of seeing and knowing that Wells Fargo received a payment from Demia since May 1, 2024, they continued to promote the false narrative that no such payment had been received, thereby intentionally exaggerating the amount due and outstanding on the account.

129. Wells Fargo, TJC, Robertson Anschutz, and Reed Smith colluded to submit false sworn statements in a legal proceeding to establish personal jurisdiction in order to secure a favorable judgment.

130. Wells Fargo, Robertson Anschutz, Reed Smith, and the Servicers colluded to ensure Niasha was excluded from the legal proceeding so that her false claim to an interest in the estate would survive any judgment of foreclosure and sale. Instead of attempting to foreclose her interests in the property, actual or alleged, they represented that she was not a necessary party.

30

131.    By their own admissions, TJC and Robertson Anschutz intentionally mailed correspondence to Demia without confirming the validity of the debt in an attempt to collect money or recover the property that they knew or should have known was unlawful due to Wells Fargo's willful exclusion of all monies received in connection with the account.

132.    The Servicers threatened foreclosure for non-payment even though they knew or should have known that the account was involved in a foreclosure proceeding.

133.    Wells Fargo, Robertson Anschutz, and Reed Smith intentionally mailed correspondence to Demia that Wells Fargo was and continues to be the owner and holder of the note and mortgage in connection with Demia's inherited property. However, Rocket mailed correspondence to Demia representing that Ginne Mae II MBS Pool# CM1542 is the owner of the debt. Such representation was made before Robertson Anschutz affirmed that the parties were in the "midst" of a transfer.

134.    Wells Fargo, Robertson Anschutz, Reed Smith, and the Servicers demanded money only from Demia in spite of Niasha being characterized as a potential successor-in-interest as late as August 11, 2025.

135.    Mark Aberasturi, as an attorney who holds himself out as an expert in estate law, participated in the scheme to defraud by accepting an assignment as a guardian ad litem with knowledge that Demia is the surviving spouse of the last recorded owner. For that reason, he knew or should have known that legal title rested with Demia and the existence of an unknown heir is improbable. He accepted such assignment at the detriment of depreciating equity in the property to which Demia is entitled.

136.    For the aforementioned reasons, Wells Fargo, Niasha, Robertson Anschutz, TJC, Reed Smith, and the Servicers intentionally participated in a scheme to defraud Demia of her rightful ownership of real property in violation of racketeering laws codified as 18 U.S.C. § 1962. They established a pattern of racketeering by committing mail fraud, wire fraud, extortion, and computer-related fraud in furtherance of such scheme.

## SECOND CAUSE OF ACTION – MAIL FRAUD (18 U.S.C. § 1341)

137.    Wells Fargo, Robertson Anschutz, TJC, Reed Smith, and the Servicers intentionally mailed documents and/or statements that they knew or should have known to be false to Demia for the purpose of defrauding her from her rightful ownership of real property. They acted in concert to represent that Demia owed an amount of money in connection with the property that they knew or should have known was not accurate.

138.    DOF, by and through its authorized employees committed mail fraud by using the mail service, either by depositing directly into Demia's mailbox or through the United States Postal Service, to represent legal entitlement to money that it knew or should have known was not true. *See* DOF Correspondence, Ex. I. It further mailed a judgment secured without judicial process to the county clerk of court and Demia to collect monies that it knew or should have known was not owed. It committed such violation with the intention of defrauding Demia out of her rightful ownership of her property by making an unlawful debt public and easily discoverable by potential employers and/or other business opportunities as well as demanding monies. Each act was in furtherance of the scheme to defraud orchestrated by Niasha.

139.    For the aforementioned reasons, Wells Fargo, Robertson Anschutz, TJC, Reed Smith, the Servicers, and DOF committed mail fraud in violation of 18 U.S.C. § 1341 as part of a scheme orchestrated by Niasha to defraud Demia in violation of 18 U.S.C. § 1962.

### THIRD CAUSE OF ACTION – WIRE FRAUD (18 U.S.C. § 1343)

140.    Niasha and Wells Fargo committed wire fraud when they used telecommunications to coordinate the inclusion of Niasha in Wells Fargo's business records as a potential successor-in-interest of the mortgagor of Demia's property with knowledge that she was not the mortgagor's surviving spouse.

141.    By its own admission, Wells Fargo communicated with Niasha regarding her status as a potential successor-in-interest. As of March 13, 2026 c. 9:34 AM, Wells Fargo did not claim to have received any supporting documentation from Niasha to support its inclusion of her in its records. It received documentation from Demia. It further demanded that Demia submit proof that Niasha was not the rightful owner via correspondence dated August 11, 2025.

142.    That letter post-dates confirmation from its private investigator that no living heir other than Demia was discoverable. He further had no proof of the existence of Niasha. Thus, by August 11, 2025, Wells Fargo had actual knowledge that Niasha had no legal interest in the property, and yet, it required Demia to provide evidence that Niasha should be removed from its records.

143.    For the aforementioned reasons, Niasha and Wells Fargo committed wire fraud in violation of 18 U.S.C. § 1343 by using telecommunications to coordinate a scheme to defraud Demia from rightful ownership of her property in violation of 18 U.S.C. § 1962.

**FOURTH CAUSE OF ACTION – EXTORTION (THE HOBBS ACT)**

144.    Niasha, Wells Fargo, and the Servicers committed extortion in violation of the Hobbs Act by threatening to deprive Demia of her legal interest in her real property.

145.    Niasha coordinated with Wells Fargo to defraud Demia from the rightful ownership of her home. In furtherance of that scheme, Wells Fargo received monies from Demia that it represented was applied to the outstanding balance. However, it mailed notices to Demia threatening foreclosure action for not having received those same payments.

146.    Wells Fargo initiated a foreclosure proceeding in which it claims to have been due money since May 1, 2024. After stating that Wells Fargo transferred its interest, the Servicers perpetuated the same lie as Wells Fargo and demanded an immediate payment for the total amount accumulated since that time in order to bring the account current. Failure to remit the money due would result in the filing of a foreclosure action, but the property already was the subject of a foreclosure proceeding.

147.    The Servicers also represented that it mailed the first legally-required notification to begin the foreclosure process.

148.    For the aforementioned reasons, Niasha, Wells Fargo, and the Servicers committed extortion in violation of the Hobbs Act in furtherance of a scheme orchestrated by Niasha to defraud Demia in violation of 18 U.S.C. § 1962.

**FIFTH CAUSE OF ACTION – HACKING (18 U.S.C. § 1030)**

149.    Wells Fargo, Robertson Anschutz, and Reed Smith committed computer-related fraud by (in)directly accessing Demia's personal computing device to retrieve and/or

34

remove downloaded information in furtherance of the scheme orchestrated by Niasha to defraud Demia. Their actions further interfered with Demia's ability to prepare her defenses in response to the foreclosure action by preventing access to legal databases, intercepting and/or modifying email communication, and changing the electronically stored information on her personal device.

150.    Wells Fargo and Robertson Anschutz intentionally, (in)directly accessed Demia's personal computer without her authorization to prevent her filing the Motion to Dismiss on or around September 22, 2025 instead of an answer. Thus, Demia filed the Motion to Dismiss as an answer.

151.    Wells Fargo and Robertson Anschutz intentionally, (in)directly accessed Demia's personal computing device without her authorization to prevent her accessing legal research databases to prepare her defense to the foreclosure proceeding in state court.

152.    Wells Fargo, Robertson Anschutz, and Reed Smith intentionally, (in)directly accessed Demia's personal computer without her authorization to remove and/or modify her files so that evidence of any earlier iterations of their legal filings was destroyed or to directly change Demia's writings.

153.    Wells Fargo, Robertson Anschutz, and Mark G. Aberasturi intentionally, (in)directly accessed Demia's personal computer and telephone without her authorization to modify electronic mail and/or electronically stored records to cover up their fraud-related activities.

154.    Wells Fargo, Robertson Anschutz, Reed Smith, and Mark G. Aberasturi intentionally furthered fraud with computer-related activity in violation of 18 U.S.C. § 1030 in a

scheme orchestrated by Niasha to defraud Demia by inhibiting her ability to assert a proper defense against the foreclosure action and save evidence of such fraud, thereby violating 18 U.S.C. § 1962.

### SIXTH CAUSE OF ACTION – AGGRESSIVE TACTICS (FAIR DEBT COLLECTION PRACTICES ACT)

155.    Wells Fargo, TJC, Robertson Anschutz, Reed Smith, and the Servicers, in whole or part, intentionally engaged in aggressive tactics in violation of the Fair Debt Collection Practices Act by mailing statements that they knew or should have known to be fraudulent, allegedly attempting service before 8 AM as a collection activity, filing sworn statements with the court that they knew or should have known were false, changing the locks to the property without a judgment of foreclosure and sale, misrepresenting the nature of the debt, including but not limited to the amount and/or owner, and affirming the possibility of unknown heirs when they knew or should have known that Demia is the sole heir-apparent as the surviving spouse.

156.    These parties willfully employed these methods to violate the F.D.C.P.A. in furtherance of a scheme orchestrated by Niasha to defraud Demia.

### SEVENTH CAUSE OF ACTION – SECURITIES VIOLATION (RULE 10B-5)

157.    Wells Fargo and the Servicers intentionally violated securities laws by selling and/or purchasing a securitized instrument with the note and mortgage of Demia's property as one of the underlying assets and further misrepresenting in its securities registration documents the nature of the debt, omission of fraud as a part of its investment strategy, and the misrepresentation of its ownership interests.

158.    The Servicers represented in their 10-K filing dated March 2, 2026 that Rocket Companies, Inc. acquired Mr. Cooper in an all-stock transaction on October 1, 2025. *See*

Rocket 10-K, Ex. B, p. 57. They further acknowledged in the management discussion that the acquisition of trade names is the ordinary course of business, and such a transaction is completed as an asset purchase. The billing statements mailed to Demia represent Mr. Cooper as a brand name. The discrepancy implies that such acquisition is not true, and thus it is a material misrepresentation for which strict liability must be imposed.

159. The Servicers further detailed that their business includes and significantly depends on the collection fees of performing loans. *See* Rocket 10-K, Ex. B, p. 30. In fact, they admit that an increase in delinquencies would be detrimental to their business. While the Servicers' 10-K frequently mentions its origination of mortgages, it also speaks to servicing of securities issued by government sponsored entities as well as home loans sold on the secondary market. The Servicers tend to mark these instruments at fair market value, but the market as they practice it is not fair.

160. "Collection" appears approximately 28 times in their 10-K filing, and not one (1) instance describes the misrepresentations used in connection with their collection activities. Not one instance describes the fraud and/or aggressive methods applied in connection with Demia's and similar home loans. For example, Demia's mortgage agreement grants inspection of property after notice of a reasonable purpose for such inspection, but it does not give the lender the right to change the locks.

161. Such information, if known to investors, would influence their investment decision. But the willful omission of such information increases Demia's susceptibility to fraud, theft, and other misconduct at the direction of the Servicers to ensure continuity of business.

162. Material omissions from an annual SEC filing, especially from certain sections, constitute a securities violation.

163. Admittedly, Demia's indirect participation is not traditionally addressed in Rule 10b-5 cases, but she is a victim nonetheless of the transaction of her home loan as securitized or sold separately in the secondary market.

164. Wells Fargo violated securities laws by failing to file a complete registration, thereby hindering Demia from obtaining the necessary information for her defense.

165. For the aforementioned reasons, Wells Fargo and the Servicers violated Rule 10b-5 by omitting material information and misrepresenting a major business acquisition in its annual filing.

## EIGHTH CAUSE OF ACTION – COMMON LAW FRAUD

166. The defendants, with the exception of the United States of America, intentionally made statements that they knew or should have known were false in order to reap a financial benefit and defraud Demia out of her rightful ownership of her real property.

## RELIEF REQUESTED

WHEREFORE, Demia requests the following forms of relief:

167. Compensatory and punitive damages for any and all violations as a result of racketeering activity and/or instances of fraud pursuant to 18 U.S.C. § 1964;

168. Punitive damages for any and all violations of computer-related fraud;

169. Compensatory and punitive damages for any and all violations of the Fair Debt Collection Practices Act;

170.    Compensatory and punitive damages for any and all violations of 15 U.S.C. § 78(m) and Rule 10b-5;

171.    Compensatory and punitive damages for any and all violations of common law fraud; and

172.    Such other and further relief that this Court deems just and proper.

173.    Similar relief has not been requested in this Court or any other court. A foreclosure case is pending in state court, and the claims asserted herein were raised for review for subject matter jurisdiction only. They were not put before the court for adjudication.

174.    Demia reserves the right to amend this complaint to include other and additional claims and/or defendants after discovering new facts or acquiring new evidence.

Dated: March 18, 2026
        New York, New York

                                            By: _____
                                                 DEMIA SHYMANSKY